[Crim. No. 4702. Second Dist., Div. Three. Jan. 8, 1952.]

THE PEOPLE, Respondent, v. IRVIN S. ABRAMS, Appellant.

Arthur E. Boyd, Jr., for Appellant.

Edmund G. Brown, Attorney General, and Dan Kaufmann, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendant was accused of violating section 337a, subdivision 3, of the Penal Code, in that he unlawfully received money offered for the purpose of being wagered upon the result of a horse race. Trial by jury was

waived. He was adjudged guilty. His motion for a new trial was denied. Probation was granted and execution of sentence was suspended. The notice of appeal recites that he appeals from the judgment, verdict, sentence and the "denial" of his motion for a new trial. ■ Since an appeal from a verdict or sentence is not authorized, the purported appeals therefrom will be dismissed. (*People* v. *D'Elia,* 73 Cal.App.2d 764, 766 [167 P.2d 253].)

Appellant contends that the evidence was insufficient to justify the conviction.

By stipulation the People's case was submitted upon the transcript of the preliminary examination and the exhibits referred to therein.

On February 15, 1951, at 12:05 p.m., when a police officer entered a restaurant which was operated by defendant, there were numerous customers therein and the defendant was waiting on them. The officer testified that he sat at the counter beside an unidentified man who said to the defendant, "Let me see your sheet"; the defendant took a scratch sheet from his pocket and handed it to the man; the man looked at the sheet, engaged in conversation with another man next to him, and handed the sheet to the defendant; shortly after that another man, who was sitting about four seats from the officer, stopped the defendant and they looked at a slip of paper, which was on the counter, on which there were pencil notations; they had a conversation, which the witness could not hear, and when the defendant left the man he stated that "he was in the first race"; the defendant then walked to the rear of the restaurant and gave the scratch sheet to another man; that man looked at the sheet for a few minutes and gave it to the defendant; about 12:20 p.m., a man entered the restaurant and the defendant went to the cash register which was about 10 feet from the officer, and the man who had just entered the restaurant said to the defendant, "Poor Idea in the fifth"; the defendant said, "O.K.," picked up the racing section of the newspaper, which was on the counter near the cash register, looked at it, and then stated, "That is Poor Idea. O.K. How do you want it?" and the man replied, "To win"; the man extended his hand with two one dollar bills in it; the defendant accepted the bills and placed them in his pocket; the man left the restaurant; he did not eat in the restaurant at that time; about 12:27 p.m., the defendant turned on the radio and in a few minutes the race results were broadcast; defendant opened

the scratch sheet and made notations thereon with a pencil. Then the officer arrested the defendant.

It was stipulated that the officer was qualified as an expert regarding the manner in which bookmaking is conducted in Los Angeles County. The witness testified that in his opinion the conversation, between the defendant and the man who paid the $2.00, regarding "Poor Idea" related to a wager on a horse purportedly running in the fifth race at the Santa Anita track on the day defendant was arrested.

The defendant testified that he had been in the restaurant business about 12 years, and that no one assisted him in operating this restaurant; there were about ten persons in his restaurant when the officer came in; defendant had a scratch sheet in his possession; when he went to serve one of the customers, the customer said he wanted defendant's scratch sheet and the defendant showed it to him and walked away; defendant had no conversation with a man concerning a horse named "Poor Idea"; a customer came in and said, "Here is the two dollars that I owe you," and he gave the defendant two single dollars and 47 cents; the customer owed defendant the $2.00 for four lunches, and he gave defendant the 47 cents "for [lunch]] that day"; after he had paid the defendant the customer said, "I got a hot tip in the First at Santa Anita"; the newspaper happened to be there, and the defendant said, "Is that the one?" and the customer replied, "Yes," and he walked out; then the officer arrested the defendant. He testified further that some of his customers go to the races and sometimes they look at scratch sheets; he accepted no bets in his restaurant.

A witness, called by the defendant, testified that he works at a place across the street from defendant's restaurant; shortly after 12 o'clock on said February 15th, he was in the restaurant and paid defendant $2.47 which he owed him for meals including lunch that day; he had no conversation with defendant about a horse named "Poor Idea" and he did not give defendant a bet on that horse or any other horse on that occasion.

▮ Appellant argues that there was no testimony that defendant's handwriting was on any of the exhibits, and there was no betting marker. The charge herein is that defendant violated subdivision 3 of section 337a of the Penal Code by receiving money as a wager upon a horse race. It is not a requirement, under said subdivision, that the defendant's handwriting appear on any paper used in connec-

tion with a wager on a horse race or that the defendant be in possession of a betting marker or any other paper used in connection with a wager on a horse race. (*People* v. *Hoffman,* 94 Cal.App.2d 379, 382 [210 P.2d 885].) "The only requirement is that he receive money [Citation] as a wager on a race or a purported race. . . ." (*Ibid.*)

Appellant also argues to the effect that the only evidence regarding a specific horse in a specific race was snatches of a conversation between defendant and the man; and that nothing was said about placing a bet or about any specific amount of money. The evidence shows, with respect to the name of a horse and a race, that the words "Poor Idea in the fifth" referred to a horse by the name of "Poor Idea" which was listed on the scratch sheet as being in the fifth race at the Santa Anita race track. The evidence shows, with respect to betting a specific sum, that the defendant, after referring to the racing section of the newspaper, said to the man, "That is Poor Idea. O.K. How do you want it?" and that the man replied, "To win" and then handed $2.00 to the defendant. The court could have inferred from all the evidence that the defendant received the $2.00 as a wager on the result of a horse race.

The purported appeals from a verdict and sentence are dismissed. The judgment and the order denying the motion for a new trial are affirmed.

Shinn, P. J., and Vallée, J., concurred.